UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HERBERT BRUMFIELD AND
KAREN BRUMFIELD                                          CIVIL ACTION

V.                                                       NO. 17-2223

VGB, INC. D/B/A TOYOTA OF                                SECTION "F"
SLIDELL AND RUSSELL MUNSTER, III

ORDER AND REASONS

Before the Court is the defendants' motion to strike Herbert Brumfield's affidavit and motion for summary judgment. For the following reasons, the motion to strike is SUSTAINED and the motion for summary judgment is GRANTED.

Background

Herbert Brumfield was employed at Toyota of Slidell. He was terminated in March 2016. After Brumfield was terminated, Russell Munster, the general manager of Toyota of Slidell, discovered that seven sets of keys to new vehicles were missing. Each set of keys had a value of $400, totaling $2,800. Every employee has a unique personal code, known only to them, which is used to check out vehicle keys. All seven sets were checked out in Herbert Brumfield's name. After unsuccessfully attempting to contact Brumfield several times, Munster contacted the Slidell Police Department and reported the keys missing on March 18, 2016. Officer McNulty of the Slidell Police Department reviewed the key lock report, which showed that the keys were last checked out to

1

Brumfield and had not been returned. He also collected the VIN numbers, make, model and year of each vehicle that corresponded to a missing key. Believing he had probable cause, Office McNulty obtained an arrest warrant for Brumfield on March 22, 2016.

On March 23, 2016, Officer Callais of the Slidell Police Department arrested Brumfield. Brumfield attempted to make a credit card purchase at Best Buy without the proper identification, so an employee called the police. When Officer Callais arrived, he determined that there was an outstanding warrant for Brumfield, so Officer Callais placed him under arrest and took him to jail. Subsequently, Brumfield had a mental health episode that required treatment in a mental health facility. Sometime after the arrest but before September, the keys appeared on the receptionist desk at Toyota of Slidell. Munster notified the Slidell Police Department and the charges were dismissed.

On March 16, 2017, Herbert Brumfield and his wife, Karen Brumfield, sued Munster and Toyota of Slidell, alleging defamation, false arrest, false imprisonment under Louisiana law, false imprisonment under federal law, malicious prosecution, and intentional infliction of emotion distress. On June 14, 2017, the Court dismissed the plaintiffs' state and federal claims for false imprisonment and false arrest. The defendants moved for summary judgment on December 21, 2017. The plaintiffs submitted an

opposition and an affidavit by Herbert Brumfield. In its reply, the defendants submitted a motion to strike Brumfield's affidavit.

I. Legal Standard: Affidavit

Federal Rule of Evidence 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." To attack an affidavit, a party may simply object to the material; the federal rules no longer require parties to file a separate motion to strike. Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 515 (5th Cir. 2012); see Fed. R. Civ. P. 56 advisory committee's notes to 2010 ("There is no need to make a separate motion to strike."). Instead, the party's "motion to strike will be treated as an objection." Cutting Underwater, 671 F.3d at 515.

An affidavit must be sworn to raise a fact issue precluding summary judgment, with one exception. Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988). 28 U.S.C. § 1746 permits unsworn declarations to have the force and effect of a sworn declaration if it is made "under penalty of perjury" and is verified as "true and correct." Id. The signature must be handwritten; typed notations on the signature line of "/s/" and the affiant's typed name are insufficient. See Grant v. House of

Blues New Orleans Restaurant Group, Civ. No. 10-3161, 2011 WL 1596207, at *1 (E.D. La. Apr. 27, 2011).

An affidavit must also be made on personal knowledge. Fed. R. Civ. P. 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 602. An affiant cannot simply state that their affidavit is based on personal knowledge. Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 881 (5th Cir. 2014). "Rather, the affiant must provide the district court with sufficient information to allow the [court] to conclude that the affiant's assertions are indeed based on such knowledge." Id. On a motion for summary judgment, the court will only disregard the inadmissible portions of the affidavit, but will consider the rest in determining whether to grant or deny the motion. Lee v. Nat'l Life Assur. Co. of Canada, 632 F.2d 524, 529 (5th Cir. 1980).

## II. Affidavit

Herbert Brumfield's affidavit does not contain an adequate signature. Instead of a hand written signature, there is an electronic signature of "/s/ Herbert Brumfield." The affidavit does not include a statement that it was made under "penalty of

perjury" and that it is "true and correct." Accordingly, the unsworn affidavit is deficient.

Moreover, nearly every statement made in the affidavit was made without the personal knowledge of the affiant. Most statements are speculative and offered without any supporting facts. For instance, over half of the statements accuse Russell Munster of knowingly misleading the Slidell Police Department for the distinct purpose of harming Herbert Brumfield; the affidavit states that Russel Munster "presented only partial facts to Detective McNulty," "did not tell Detective McNulty that other Toyota salesmen who assisted me (Brumfield) were given and had access to the missing keys and were possible suspects," and "instigated my (Brumfield's) prosecution and arrest in retaliation for a dispute between me and Toyota salesman Chris Owens and Munster." He also made speculative and self-serving comments on Officer McNulty's conduct, such as, "Detective McNulty would have expanded this investigation had he known this evidence." Brumfield's assertions are unsubstantiated; he was not present during the investigation and presents no facts to demonstrate that he has personal knowledge of it or Munster's motives. The affidavit is not admissible and cannot be considered for this motion for summary judgment.

III. Legal Standard: Motion for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a

6

scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## IV. Motion for Summary Judgment

The plaintiffs allege that the defendants' report of the stolen keys to the Slidell Police Department was misleading and fabricated, and intended to harm Herbert Brumfield. The plaintiffs

assert that Munster should have completed a more thorough investigation of the missing keys before contacting the police, did not have reasonable grounds to believe that Herbert Brumfield had the keys,[1] and only contacted the police to retaliate against Brumfield after he had a work place conflict with another employee.[2] The plaintiffs assert the following causes of action against the defendants: (1) defamation; (2) malicious prosecution; and (3) intentional infliction of emotional distress.[3]

---

[1] Brumfield contends that he checked out the keys to move the cars in inclement weather and that other employees were helping him move them. When he left, he asked the employees to turn in the keys. He claims that Munster knew (or could have known with a more thorough investigation) that other employees actually had the keys.

[2] Brumfield allegedly "stood up" to another employee, Chris Owens, who is friends with Munster. According to Brumfield, Munster's report was in retaliation for the dispute with Owens. Brumfield claims that "Munster was mean and cruel to [him] because [he] [i]s black and talked and stood up to [Munter's] friend Chris Owens who is white. Brumfield also claims he was fired in retaliation for the dispute. Munster testified that Brumfield was terminated after he was observed rummaging through a manager's office without permission, which Brumfield denies.

[3] In their dizzying opposition, the plaintiffs discuss and make arguments for causes of action that they did not assert in the complaint, such as negligent misrepresentation and retaliation under Title VII. The Fifth Circuit has held that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005). The Court strains to ascertain the precise arguments that the plaintiffs are making in their opposition, and to the extent they are addressing the claims they did assert in their complaint. Regardless, over half of the opinions cited were from other jurisdictions, and much of the Louisiana case law cited is irrelevant. Case precedent from Georgia and Massachusetts does nothing to persuade the Court, even if presented on the correct causes of action, when Louisiana case law

A. Defamation

To prevail in a defamation suit, a plaintiff must prove: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Fitzgerald v. Tucker, 98-2313 (La. 6/29/99); 737 So.2d 706, 716. Because the plaintiff must establish every element, if the communication made to the third party is privileged, the claim fails. There are two types of privileged communications: absolute and conditional or qualified. Kennedy v. Sheriff of East Baton Rogue, 2005-1418, p. 16 (La. 7/10/06); 935 So.2d 669, 681.

Absolute privilege exists in limited circumstances, like in judicial proceedings, and protects the publisher from all liability. Madison v. Bolton, 102 So.2 433, 439 (La. Mar. 17, 1958), rev'd on other grounds, Schaefer v. Lynch, 406 So.2d 185 (La. Nov. 16, 1981). Conditional privilege "arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty . . . ." Kennedy, 935 So.2d at 681 (quoting Toomer v. Breaux, 146

---

adequately addresses the issues. However, the thrust of the plaintiffs' argument is that Munster acted maliciously when he contacted the police, and misled them when reporting the missing keys. The Court will consider these general contentions, regardless if they are made in the context of the negligent misrepresentation or Title VII claim.

9

So.2d 723, 725 (La. App. 3 Cir. 1962)). Conditional privileges apply "if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he was a duty, [and] (c) to a person having a corresponding interest or duty." Id. (quoting Toomer, 146 So.2d at 725). Louisiana courts have "recognized that the public has an interest in possible criminal activity being brought to the attention of the proper authorities, and have extended a qualified privilege to remarks made in good faith." Id. at 683. Likewise, the police have a duty to investigate whether the allegations are true. Id. The Louisiana Supreme Court has expressly granted qualified immunity to individuals who reported criminal activity to police, even though they were ultimately mistaken, noting that "[i]t would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead."[4]

---

[4] In Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La. 7/10/06); 935 So.2d 669, the Court held that conditional privilege applies to reports to law enforcement of potential criminal activity. There, Jack in the Box employees notified the police after a customer attempted to pay with a $100 bill. The employees believed the bill was counterfeit. East Baton Rouge Sherriff deputies immediately responded, and ultimately handcuffed the owner of the bill, Alfred Kennedy, and transported him to the sheriff's station until they could assess the bill's authenticity. The bill was legitimate, and the officers released Kennedy. Kennedy sued the Sherriff of East Baton Rouge Parish and Jack in the Box for damages, claiming defamation.

After the Court determines that the requirements for invoking qualified privilege are satisfied, it will then consider whether the privilege was abused. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 18 (La. 7/5/94); 639 So.2d 730, 745. "While the first step is generally determined by the court as a matter of law, the second step of determining abuse of a conditional privilege or malice is generally a fact question for the jury [u]nless only one conclusion can be drawn from the evidence." Kennedy, 935 So.2d at 682 (quoting Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p.18 (La. 7/5/94), 639 So.2d 730, 745. A privilege is abused if the publisher "(a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." Kennedy, 935 So.2d at 684. When creating this standard, the Supreme Court of Louisiana acknowledged that it is good public policy to protect individuals from exposure to civil liability for alerting police of potential criminal activity. Id. at 685-86.

Qualified privilege applies to Munster's communication with the Slidell Police Department. The person communicating, Munster, had an interest in reporting possible criminal activity to law enforcement. The Slidell Police Department has a similar duty to consider that information and take action, if appropriate. Although discussed in detail below, the defendants have submitted evidence establishing that they acted in good faith, and the plaintiffs have failed to rebut that evidence or identify a genuine

issue of fact as to the motive of the defendants. As a matter of law, conditional privilege applies to communications alerting the authorities of potential criminal activity, like theft, if completed for the purpose of alerting the authorities (and not solely to injure the accused). See Kennedy, 935 So.2d at 683.

Next, the Court turns to whether Munster abused his privilege. The defendants assert that their communication was reasonable based on the information they had. They submit that the key report identified Brumfield as the last person to check out the keys and that they had no reason to doubt the key report because every employee has a unique pin number that only the employee knows. Further, they contacted Brumfield several times before they contacted the police, and were either forwarded to voicemail or ignored.

The plaintiffs contend that Munster contacted the police to retaliate against Brumfield for a workplace conflict. Further, they contend that Munster did not have reasonable grounds to believe that Brumfield was in possession of the keys, and knew that his accusations were baseless, but still contacted police for the purposing of harming Brumfield. But the plaintiffs failed to submit any facts on this record that support their claims. In his deposition, Brumfield repeatedly accuses Munster of being "mean" and "pure evil," but stated that he does not have any evidence that Munster believed the information was false. The plaintiffs'

unsubstantiated assertions and conclusory allegation do not create a factual controversy as to whether the defendants abused their privilege.

The defendants have supported their assertions that Munster contacted the police because he actually believed Brumfield was in possession of the keys. The key report indicated that Brumfield was the last person in possession of the keys and they had not been returned. He also contacted Brumfield several times before contacting the police. There is nothing in the record that Munster knew his report was false or acted in reckless disregard as to its falsity. Accordingly, Munster's communications are protected by qualified privilege, and therefore, the plaintiffs cannot succeed on a defamation cause of action.

## B. Malicious Prosecution

The elements of a malicious prosecution cause of action are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." Lemoine v. Wolfe, 2014-1545, p. 8 (La. 3/17/15); 168 So.3d 362, 368. The first issue is whether Brumfield satisfies that third

element. The plaintiffs do not have a malicious prosecution claim because Herbert Brumfield's criminal proceedings were never reached on the merits. The case was dismissed before Brumfield made an appearance in court. Without any formal proceedings, there was no opportunity for a court to reach the merits, and thus, there is no cause of action for malicious prosecution in these circumstances.[5]

C. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So.2d 1205, 1209 (La. Sept. 9, 1991). The first element requires that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. Louisiana courts have held that reports

---

[5] Both parties briefed the probable cause and malice elements. Because the plaintiff cannot satisfy the favorable termination element, it is unnecessary for the Court to determine if he satisfied the other elements.

of suspected criminal activity do not constitute "extreme and outrageous" conduct. E.g. Cook v. American Gateway Bank, 2010-0295, p.18 (La. App. 1 Cir. 9/10/10); 49 So.3d 23, 36 ("The same legal considerations that justify the defense of conditional privilege for reports of suspected criminal activity also compel the conclusion that such a report, made in good faith and founded upon reasonable suspicions, simply cannot constitute "extreme and outrageous" conduct under the foregoing standard."); Henderson v. Bailey Bark Materials, 47,946, p.14 (La. App. 2 Cir. 4/10/13); 116 So.3d 30, 40.

As discussed above, the plaintiffs have provided no evidence to rebut the defendants' assertions that they reported the missing keys in good faith. Moreover, the plaintiffs have not submitted evidence that creates a genuine issue of material fact as to the good faith basis of the report. Accordingly, plaintiffs fail to establish on this record a critical element of their intentional infliction of emotional distress claim.

Considering the foregoing, IT IS ORDERED: that the defendants' motion to strike Herbert Brumfield's affidavit is SUSTAINED. IT IS FURTHER ORDERED: that the defendants' motion for summary judgment is GRANTED.

New Orleans, Louisiana, January 10, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE